## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CASE NO: 5:18 CR 627** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **-vs-** | ) | |
| | ) | |
| **JAMES E. ROBINSON** | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM** |
| **Defendant.** | ) | |
| | ) | |

Now comes the Defendant, **JAMES E. ROBINSON,** by and through his undersigned counsel, and hereby submits the following sentencing memorandum in the above-captioned matter.  Defendant's sentencing hearing is scheduled for July 1, 2019 at 11:00 a.m.

Respectfully Submitted,

/s/ Brian M. Pierce
Brian M. Pierce (#0063736)
Attorney for James E. Robinson
54 E. Mill Street, Suite 400
Akron, Ohio 44308
330-253-0785 (telephone)
330-253-7432 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing has been served via the Court's electronic filing system on the 28th day of June, 2019.

/s/ Brian M. Pierce
Brian M. Pierce (#0063736)
Attorney for James E. Robinson

1



## MEMORANDUM

**A.     Introduction**

On March 6, 2019, Defendant, James E. Robinson pled guilty to one count of Damaging Protected Computers in violation of 18 U.S.C. §1030 (a) (5) (A), and 18 U.S.C. §1030 (C) (4) (B) and 846.

James Robinson was born in Beckley, West Virginia and is currently thirty-four (34) years of age.   When he was three his family moved to Ohio.   Mr. Robinson's father is deceased and his mother currently receives social security disability (SSD) for a medical condition. Mr. Robinson has two sisters who both reside in Northeast Ohio.   Mr. Robinson is not married and has no children.   Mr. Robinson graduated from Crestwood High School in Mantua, Ohio in 2004.   He earned a medical assistant certificate from Remington College in 2010. Mr. Robinson suffers from epilepsy with a history of seizures and as a result does not have a driver's license.   In addition, Mr. Robinson has experienced depression and began to self-medicate with drugs and alcohol.

Mr. Robinson has a lengthy history of substance which began during his teen years. Mr. Robinson has abused Cocaine, Marijuana, Methamphetamine and alcohol.   Since his incarceration, Mr. Robinson has completed several classes including a forty (40) hour Substance Abuse Program. (See, Exhibit "**A**").

Despite Mr. Robinson's substance abuse problems, he maintained full time employment up until the time of his arrest on these charges.   Following his arrest, Mr. Robinson's employer remained supportive and desired for him to return to the Company

2

(See, Exhibit "**B**"). Mr. Robinson's mother and sister remain supportive as well.  Mr. Robinson is amenable to both mental health and substance abuse treatment during his incarceration.

**B.      The Goals of Sentencing - 18 U.S.C. § 3553(a)**

After <u>Booker</u>, federal sentencing is vastly different.  Treating the Guidelines as advisory requires that the Court consider the guideline range calculation as merely one of many factors in determining a sentence *no greater than necessary to achieve the goals of sentencing* as set forth in 18 U.S.C. § 3553(a)(2).  See, <u>Gall v. United States</u>, 128 S.Ct.586, 597 n.6 (2007); <u>Kimbrough v. United States</u>, 128 S.Ct. 558, 570 (2007).  The overriding principle and mandate of § 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to achieve the four purposes of sentencing as set forth in Section 3553(a)(2): (a) retribution; (b) deterrence; (c) incapacitation; and (d) rehabilitation.  <u>Id</u>.

The "sufficient but not greater than necessary" requirement has been referred to as the "parsimony provision."  See, <u>United States v. Denardi</u>, 892 F.2d 269, 276-77 (3rd Cir. 1989).  This Circuit has found that the parsimony provision serves as "the guidepost for sentencing decisions post-<u>Booker</u>" and sets an independent limit on the sentence a court may impose.  <u>United States v. Ferguson</u>, 456 F.3d 660, 667 (6th Cir. 2006), see also <u>United States v. Cull</u>, 446 F.Supp.2d 961, 963 (E.D. Wis. 2006).  Since § 3553(a) requires a sentence to be no greater than necessary to meet the four purposes of sentencing, imposition of a sentence greater than necessary to meet those purposes is reversible, even if within the applicable guideline range.  <u>Id</u>.



MALARCIK, PIERCE,
MUNYER, & WILL
— ATTORNEYS AT LAW —

BRIAN
PIERCE
ATTORNEY AT LAW

The Gothic Building
54 E Mill St
Suite 400
Akron, OH 44308

www.ohiodefensefirm.com
(330) 253-0785



MALARCIK, PIERCE, MUNYER, & WILL
— Attorney At Law —

BRIAN PIERCE
Attorney At Law

The Gothic Building
54 E Mill St
Suite 400
Akron, OH 44308

www.ohiodefensefirm.com

(330) 253-0785

C.   **The Guidelines and Other Factors Courts Must Consider in Determining a Punishment that Fulfills the Sentencing Mandate under § 3553(a)(2)**

In determining the sentence minimally sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the court must consider several factors listed in Section 3553(a). Those factors include:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed -

   (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)   to afford adequate deterrence to criminal conduct;

   (C)   to protect the public from further crimes of the defendant; and

   (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the advisory guideline range;

(5)   any pertinent policy statements issued by the Sentencing Commission;

(6)   the need to avoid unwarranted sentence disparities; and

(7)   the need to provide restitution to any victims of the offense.

4

See, 18 U.S.C. § 3553(a) (2007).  See generally, <u>Rita v. United States</u>, 127 S.Ct. 2456, 2463-65 (2007); <u>Kimbrough v. United States</u>, 128 S.Ct. 558 (2007); <u>Gall v. United States</u>, 128 S.Ct. 586 (2007); <u>Spears v. United States</u>, 129 S.Ct. 840 (2009).



While district courts must in all cases "consider" the guideline range, <u>Booker</u>, 543 U.S. 220, 245-46, the Guidelines do not subordinate the other factors in § 3553(a).  As this Circuit has pointed out, the sentencing mandate under § 3553(a) serves as "the guidepost for sentencing decisions post-Booker" <u>Ferguson</u>, 456 F.3d at 667, and the Guidelines carry no more weight than any other factor under § 3553(a).  Importantly, a sentencing court may not presume that a sentence within the guideline range is reasonable.  <u>Rita</u>, 127 S.Ct at 2463-65.

In a post-<u>Booker</u> world federal district judges have significant discretion to impose sentences below (or above) those called for under the Sentencing Guidelines.  See, <u>Spears v. United States</u>, 129 S.Ct. 840 (2009); <u>Kimbrough v. United States</u>, 128 S.Ct. 558, 570 (2007); <u>Gall v. United States</u>, 128 S.Ct. 586, 597 n.6 (2007).  A non-guideline sentence may not be presumed to be unreasonable, and district courts need not impose sentences greater than they believe necessary out of fear of reversal.  <u>Rita</u> at 2467.  Instead, after determining the Guideline range, the sentencing court may decide that a sentence in that range:

> should not apply, perhaps because (as the Guidelines
> themselves foresee) the case at hand falls outside the
> "Heartland" to which the Commission intends
> individual Guidelines to apply, U.S.S.G. § 5K2.O,
> perhaps because the Guidelines sentence itself fails
> properly to reflect § 3553(a) considerations, or perhaps
> because the case warrants a different sentence regardless.
> See Rule 32(f).

5



MALARICK, PIERCE, MUNYER, & WILL — ATTORNEYS AT LAW —

BRIAN PIERCE
ATTORNEY AT LAW

The Gothic Building
54 E Mill St
Suite 400
Akron, OH 44308

www.ohiodefensefirm.com

(330) 253-0785

Rita, 127 S.Ct. At 2465. District courts may even consider arguments that a particular guideline reflects "an unsound judgment" generally. Rita at 2468; Spears at 843. The appellate courts should not disturb the court's judgment if the sentencing judge provides reasons for the sentencing decision. Rita, at 2468.

**D.  Appropriate Loss Amount Pursuant to U.S.S.G. 2B1.1 (F-H)**

The plea agreement entered into by the parties permits both sides to argue the appropriate amount of loss in this matter. U.S.S.G. §2B1.1 (b) (1) (A-P) sets forth the appropriate increase in offense levels based upon the monetary loss. Pursuant to the parties agreement the Government will not claim that the loss amount exceeds 1.5 million (14 levels) and the defense will not claim the loss amount is less than $150,000.00 (10 levels).

In this case, there are six reported victims who submitted loss amounts that are attributed to Defendant's conduct. One particular victim, the Ohio DAS submitted a loss amount that is nearly four times more than the total loss of all of the other victims combined.

Defendant concedes that victims are entitled to be compensated for any actual loss and pecuniary harm that is "reasonable" See, U.S.S.G. §2B1.1, Application note 3 (A) (v) (III).

The Defendant takes issue with one expense incurred by the Ohio DAS, one of six victims in this case.



The total amount claimed by Ohio DAS is $592,288.60. The majority of this total is $548,677.60 which represents the purchase of four (4) Firewalls.

Defendant has retained the services of Greg Kelley, an IT specialist with Vestige, LTD. Mr. Kelley has reviewed the Defendants conduct which the Government has classified as a DDOS Attack. Due to the nature of this attack, there is generally no damage done to the electronic equipment. Further, the implementation of Firewalls is not sufficient to prevent a subsequent DDOS event. (See, Exhibit "**C**").

Based upon the nature of Defendant's conduct the Ohio DAS purchase of insufficient firewalls as a remedial measures is not reasonable and should not be calculated in the total loss amount.

If the purchase amount of the Firewalls is eliminated from the loss amount, the total loss is reduced to $163,618.27.(See, Exhibit "**D**"). Pursuant to 2B1.1 (b) (1) (F) there should be an increase of ten (10) levels. This results in an adjusted offense level of 24.

**E.    Application of Sentencing Factors to this Defendant**

Applying the Sentencing factors in Section 3553(a) (2) this Court can fashion a sentence which will balance the need to incarcerate Mr. Robinson and also reflect the seriousness of his conduct. Counsel requests that this Court impose a sentence which will afford Mr. Robinson the opportunity to participate in both drug and mental health treatment past issues.

Defendant entered a timely guilty plea and accepts full responsibility for his conduct.

7



**F.      Conclusion**

James E. Robinson's case presents precisely the type of factors that should be considered by the courts after <u>Booker</u>. The succession of cases after <u>Booker</u>, including <u>Rita</u>, <u>Gall</u>, <u>Kimbrough</u>, and <u>Spears</u>, all demonstrate that this court has the authority and duty to consider the above-mentioned factors when arriving at a sentence that fulfills the sentencing mandate of § 3553(a).

Under the circumstances, it is respectfully requested that this Court take into account the factors unique to the Defendant's case that are sufficient to achieve the goals of sentencing under § 3553(a)(2).

Counsel also requests that this Court recommend to the Bureau of Prisons that Defendant serve his sentences at the Federal facility located in Elkton, Ohio and that he complete the RDAP five hundred (500) hour substance abuse program.

Respectfully Submitted,

 /s/ Brian M. Pierce
Brian M. Pierce (0063736)
Attorney for James E. Robinson
54 E. Mill Street, Suite 400
Akron, Ohio 44308
330-253-0785 (telephone)
330-253-7432 (facsimile)

8



Northeast Ohio Correctional Center

THIS CERTIFIES THAT

James Robinson

Has successfully completed the required course of study in the
40 hour Substance Abuse Program and is therefore awarded this

CERTIFICATE OF ACHIEVEMENT

Given this 5th day of September, 2018

Substance Abuse Counselor

Assistant Warden

EXHIBIT

A



CoreCivic

Northeast Ohio Correctional Center

THIS CERTIFIES THAT

JAMES ROBINSON

Has successfully completed the required course of study in the
40 hour Self Improvement Program, That included Motivation,
Thinking Errors, Anger Management, Communication skills, and
Parenting classes. Therefore awarded this

CERTIFICATE OF ACHIEVEMENT

Given this 6th day of September, 2018

Substance Abuse Counselor

Assistant Warden



1246 Princeton Street   Akron, Ohio 44301          P : 330-535-3000   F : 330-535-3001

Monday, July 31, 2018

Dear Sir or Madam,

This letter is intended as a character reference for James Robinson, who has been an employee and supervisor with our company for the past year.

James is a vital member of the team at American Utility Processing. He has always been a dependable worker, with a nearly perfect record of attendance and a willingness to work extra hours to get the job done right.

We have come to trust and rely on James as a leader. He is courteous and supportive of his co-workers. As a model employee, he has maintained a high standard of conduct and boosted the morale of the crew he works with. James has always been patient and reasonable, often mediating disputes. He is neither the source nor target of complaints.

In short, we at American Utility Processing hope you take into account these facts when making your decision and that James Robinson will be able to resume his employment with us soon.

Sincerely,

Richard Kmiecik, COO/Principal

James Rakes, Plant Manager

EXHIBIT
B
tabbies



**VESTIGE**
Digital Investigations

*TURNING DIGITAL EVIDENCE INTO INTELLIGENCE*™

New York | Cleveland | Columbus | Pittsburgh | 800.314.4357
www.VestigeLtd.com

June 27, 2019

Brian Pierce
Malarcik, Pierce, Munyer & Will
54 East Mill St, Suite 400
Akron, OH  44308

Re: US v James Robinson

Brian,

I have reviewed the letter from Ohio Department of Administrative Services (DAS) dated June 4, 2018.  In the letter the State of Ohio lists four (4) Edge Palo Alto Firewalls as part of the direct costs associated with the Distributed Denial of Service (DDoS) attack committed against them.  It should be noted that the specific model of firewall purchased is not addressed in the letter.

DDoS attacks are generally classified as two different types.  The first type is a volumetric attack.  Volumetric attacks attempt to take down an internet service by flooding the victim's device or service with a high volume of traffic.  This high volume consumes the victim's resources and prevents legitimate traffic from being serviced by the victim.  The second type is an application attack.  An application attack targets a specific application such as a website or email server.

DDoS attacks typically do not permanently damage electronic equipment.  While services may be temporarily unavailable during the attack, once the attack stops the equipment and services will return to normal.  The goal of the DDoS attack is to consume services during the attack, not to permanently damage equipment.

Firewalls, such as the Palo Alto Firewalls noted in the June 4, 2018 letter, provide various types of protection to an entity's network.  The job of the firewall is to filter traffic coming in and out of a network to only allow legitimate traffic to flow.  The filtering can be done by closing off certain types of traffic or by looking for types of traffic that may show a malicious intent.  In order to perform this work, the firewall must still inspect that traffic and then follow rules that are set up in the firewall to decide what to do with that traffic.  It is that feature of a firewall that makes a firewall not best equipped to prevent DDoS attacks.  A February 2019 post on Palo Alto's website (https://knowledgebase.paloaltonetworks.com/KCSArticleDetail?id=kA10g000000CIOICA0) references a white paper by Palo Alto which addresses this point.  The white paper states "In general, volumetric protection strategies should involve a layered approach and be comprised of local DDoS/DoS protection at the enterprise/data center location and protection at the service provider and/or cloud location."  The white paper goes on to say that "For example, if only local DoS protection is implemented in front of the data center, the attacker can simply launch a volumetric attack that consumes all of the bandwidth connecting the service to the Internet."

Digital Forensics | CyberSecurity | ESI Services



EXHIBIT
C



Digital Investigations

**TURNING DIGITAL EVIDENCE INTO INTELLIGENCE**™

New York | Cleveland | Columbus | Pittsburgh | 800.314.4357

www.VestigeLtd.com

In order to properly protect against DDoS attacks merely implementing a firewall is insufficient to protect an entity's services and resources.


Sincerely,

Greg Kelley, EnCE, DFCP
Vestige Digital Investigations

Digital Forensics | CyberSecurity | ESI Services



## LOSS AMOUNT

eyemg                              $84,645.00

*Ohio DAS              $548,677.60 **(amount less cost of Firewalls- $43,611.00)**

Department of Defense        $10,520.00

City of Akron                      $7,768.21

National Institute of Health   $16,535.09

U.S. Treasury Department     $538.97

                                   $668,684.87

**Loss Amount less cost of Firewalls $163,618.27**

