## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:18CR627 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES ROBINSON, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Before the Court are Defendant James Robinson's Requests for Compassionate Release. (Docs. 39 & 40). For the following reasons, the Court **DENIES** Defendant's Motions.

### I. BACKGROUND

On October 24, 2018, a Grand Jury indicted Defendant with one count of Damaging Protected Computers, a violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B). (Doc. 22). On March 6, 2019, Defendant pleaded guilty under a Plea Agreement. On October 3, 2019, the Court sentenced Defendant to a term of 72 months imprisonment and restitution in the amount of $668,684.87. Defendant is currently serving his imprisonment at Elkton Federal Correctional Institution.

On April 15 and again on April 22, 2020, Defendant filed his Motion for Release *pro se*. (Docs. 39 & 40). Defendant argues that the presence of COVID-19 justifies his compassionate release. The Government opposed Defendant's request on April 23, 2020. (Doc. 41).

Defendant then filed a lengthy Reply in support of his requested relief. (Doc. 42).[1] Upon initial review, the Court allowed the Bureau of Prisons the opportunity to first decide Defendant's request for release. (Non-Doc Order, 5/6/2020). On May 8, 2020, the Government informed the Court that the Bureau had denied Defendant's request. (Doc. 43).

## II. LAW & ANALYSIS

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, in certain circumstances, a defendant may ask the court to modify a sentence, otherwise known as "compassionate release." *Id.* at § 3582(c)(1)(A). Before doing so however, a defendant must exhaust his administrative remedies. *Id.*; *United States v. Raia*, 954 F.3d 594 (3rd Cir. 2020).

After a defendant has exhausted his administrative remedies, he may ask the court for compassionate release. A defendant is entitled to compassionate release if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission." § 3582(c)(1)(A)(i).[2]

Section 1B1.13 of the Sentencing Guidelines outlines the Commission's applicable policy statement. There, the Commission lists 'extraordinary and compelling reasons' as relating to a defendant's medical condition, age or family circumstance. U.S.S.G. § 1B1.13, n. 1. There

---

[1] Defendant's Reply contains, in addition to compassionate release arguments under 18 U.S.C. § 3582(c)(1)(A), numerous theories to justify his release. These theories include habeas relief under 28 U.S.C. § 2241; statutory relief under 42 U.S.C. § 1983; and various theories of tort relief. This "kitchen-sink" approach is inappropriate at this juncture. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (the Sixth Circuit has consistently held that arguments made for the first time in reply briefs are waived); *see also United States v. Jones*, 2018 WL 5046669, *5 (E.D. Ky. Oct. 17, 2018) (pro se inmate waived argument presented for first time in reply brief). Rather, the Court will focus on Defendant's initial request for compassionate release.

[2] There is a second scenario that entitles a defendant relief based on his or her age, but that section is not applicable to Defendant. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

is also a 'catch-all' provision for extraordinary reasons outside those listed.  *Id.*  However, before a court looks at the 'extraordinary and compelling reasons' supporting defendant's release, the court must first determine that defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g).  *Id.* at § 1B1.13(2).

Section 3142(g) list four factors for the courts to consider whether a defendant poses a danger to the community.  Those factors include: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to the community.  18 U.S.C. § 3142(g)(1)–(4).

Here, while Defendant has exhausted his administrative remedies, he has not discussed his danger—or lack thereof—to the community.  Rather, Defendant states in conclusory fashion that his crimes were nonviolent, there were no victims and he is not a danger to the community. (Doc. 39, PageID: 232).  The nature and circumstances of Defendant's offense however, suggest otherwise.  For almost one year, Defendant initiated numerous Distributed Denial of Service[3] attacks against various public and private institutions.  Defendant rendered multiple websites— including servers critical to government in areas of public safety—inoperable to legitimate users. In total, Defendant's actions caused various entities over $668,000.00 worth of damage.  While it is true that Defendant's crime was "nonviolent," Defendant inflicted significant damage to both the public and private realms.  And while Defendant inflicted no physical harm, his victims

---

[3] A Distributed Denial of Service or DDoS attack is an attack against a specific server or servers on the Internet that attempts to illegitimately utilize a collection of computer systems to bring down the target server(s) by sending an excessive amount of malicious network traffic over the Internet to a host.  There are a few ways this can be accomplished.  Regardless of the manner, the result is the targeted system becomes overwhelmed with network traffic causing it to crash or ties up resources which ultimately denies legitimate users from being able to access the server.

experienced real financial loss. Accordingly, the Court finds that the nature and circumstances of Defendant's actions demonstrate a danger to the community.

The weight of the evidence also reflects Defendant's danger to the community. Section 3142(g)'s second factor goes to the weight of the evidence of Defendant's dangerousness. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). Here, Defendant initiated multiple attacks on various entities. This was not a one-time occurrence. And the attacks had a significant safety and financial impact on the targeted entities. Thus, Defendant's repeated attacks and the impact they caused constitute significant evidence as to Defendant's danger to the community.

In considering the history and characteristics of Defendant, the Court considers:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

18 U.S.C. § 3142(g)(3)(A)–(B).

Taking Defendant at his word, he appears to have family support, a place to reside and employment should the Court order his release. And while Defendant had a history of drug abuse, he appears to have received treatment and taken multiple classes to help control his drug abuse while incarcerated. In sum, it appears Defendant's time in prison has had a positive impact on his life. With the help of Defendant's imprisonment, this factor weighs in favor of Defendant.

Lastly, § 3142(g)(4) requires the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The seriousness of Defendant's crimes cannot be understated. The number of attacks, the time-period during which he conducted the attacks and the amount of damage he caused all reflect Defendant's dangerousness. He attacked and interfered with services necessary for public safety. Rather than showing remorse, he boasted of the attacks on social media. Moreover, he provided "how-to" instructions to others. While it is true Defendant had no physical contact with anyone, he harmed the public in countless of other ways and prepared others to do the same. Accordingly, the nature and seriousness of Defendant's actions demonstrate the dangers Defendant poses to the public.

After weighing the § 3142(g) factors, the Court finds Defendant a danger to the community. The Court cannot mitigate that danger by releasing Defendant into the public. With the prevalence of devices that can access the internet, the Court cannot justify releasing Defendant into the community. Moreover, Defendant's release would cause a significant burden on those government agencies charged with supervising Defendant. Accordingly, Defendant's request for release is without merit.

The Court agrees that the presence of COVID-19 in our community is 'extraordinary' in the normal sense of the word. And the Court acknowledges that conditions in prisons are not ideal for limiting the spread of the virus. But a wide-scale release of inmates is not the right answer, especially when those inmates present a danger to the public. Indeed, the court in *Wilson, et al. v. Williams, et al.*, 4:20CV794 (N.D. Ohio) (Gwin, J.)—a case Defendant relies on—realized that wide-scale release is not the answer. Rather, the court in *Wilson* restricted the potential class of prisoners at Elkton to those vulnerable inmates. (*Wilson*, Doc. 22). The

Bureau of Prisons identified over 835 inmates who fit that class. (*Id.* at Docs. 35-1 & 49). Defendant was not identified.

Furthermore, the virus's presence at Elkton does not justify Defendant's release to home confinement. As discussed, Defendant remains a danger to the community. And Defendant has not presented adequate evidence regarding his susceptibility to serious risks should he contract the virus. Rather, Defendant speculates what may happen to him as a result of his prior diagnosis of epilepsy. Such speculation is not a justification for release to home confinement.

The Bureau of Prisons is working to limit the impact of COVID-19 at Elkton. Whether through their own policies or court orders, the Bureau is releasing vulnerable inmates and lessening overall population in the facility. The reduced population should help contain the virus's impact at the facility. In addition, the Bureau is enacting other precautionary measures. (Doc. 41, PageID: 248-49). The Court has no reasons to believe that the Bureau has anything but the best intentions to keep the inmate population safe. *See also Raia*, 954 F.3d at 597 (anticipating the Bureau will properly utilize its statutory authorities to manage the COVID-19 crisis).

### III. CONCLUSION

At Defendant's Sentencing, the Court imposed a Sentence that reflected the seriousness of the offense; provided adequate deterrence to others; protected the public; and provided defendant with the resources he needed to better himself. Defendant appears to have bettered himself while incarcerated. However, a term of imprisonment of only two years of incarnation and the remainder served in the comfort of one's home is insufficient considering Defendant's crimes. The presence of COVID-19 in the facility by itself does not justify Defendant's release.

After considering these facts, the § 3553(a) factors and the danger Defendant presents to the public, the Court **DENIES** Defendant's Requests for Compassionate Release.  (Docs. 39 & 40).

    **IT IS SO ORDERED.**

                                             s/ Christopher A. Boyko  
                                             **CHRISTOPHER A. BOYKO**  
                                             **Senior United States District Judge**

**Dated: May 18, 2020**